UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN RUSH,

        Plaintiff,

                                              Case No. 1:11-cv-424
v.                                        Hon. Hugh W. Brenneman, Jr.

DOUGLAS R. LLOYD,

        Defendant.

_____/

**OPINION**

        Plaintiff has filed a *pro se* civil rights action.  This matter is now before the court on defendant's motion for summary judgment (docket no. 29).  The motion is unopposed.

        **I.**      **Background**

        Plaintiff initiated this action by filing a sparsely-worded complaint and amended complaint which alleged that defendant, Eaton County Chief Assistant Prosecutor Douglass Lloyd, engaged in a consumer rights violation.  Documents attached to plaintiff's original complaint reflect that he sent the Michigan Secretary of State a check in the amount of $101.00 without sufficient funds to cover the check.  *See* Secretary of State Notice (Aug. 31, 2010) (docket no. 1 at p. 5).  Pursuant to statute, the Secretary of State required plaintiff to pay the $101.00 by cash, certified check, cashier's check or money order, by September 20, 2010, or face an additional $60.00 penalty for tendering the non-sufficient funds (NDF) check.  *Id.*  Plaintiff did not meet this deadline.  Douglas Lloyd letter (Jan. 11, 2011) (docket no. 1 at p. 6).   Plaintiff alleged that defendant's January 11, 2011 letter stated "his intentions to request [a] warrant for [plaintiff]."  Amend. Compl. at p. 1 (docket no. 5).

Defendant's letter, which forms the basis of plaintiff's action, advised plaintiff that his failure to respond to the Secretary of State's notice "creates a legal presumption that this check was passed with the intent to defraud, a criminal act," but that he could resolve the matter and avoid criminal prosecution by following the payment instructions as set forth in the letter.  Lloyd letter (Jan. 11, 2011).  In the letter, defendant Lloyd offered plaintiff a chance to participate in a diversion program, which would allow him to avoid an arrest, a criminal record and costly litigation.  *Id.*  The diversion program required plaintiff to make two different payments by January 18, 2011:  (1) a restitution and check processing fee payable to the State of Michigan - Secretary of State in the amount of $161.00; and (2) a diversion fee payable to Eaton County in the amount of $165.00.  *Id.* In his uncontested affidavit, defendant explained that Eaton County's "Bad Check Diversion Program" referenced in the letter permits individuals who might otherwise be charged with a criminal act under M.C.L. § 750.131 ("Drawing on insufficient funds") an opportunity to avoid prosecution by paying the amount of the dishonored check, along with a fee that is intended to cover the costs associated with the program.  Douglas Lloyd Aff. at ¶¶ 1-15 (docket no. 30-4).  Finally, defendant's letter advised plaintiff that his "failure to pay this office by January 18, 2011 to participate in our diversion program will result in an initial $50.00 diversion fee increase or a warrant being issued from your arrest."  Lloyd letter (Jan. 11, 2011).

Plaintiff filed this *pro se* action on April 27, 2011.  The parties have proceeded on the basis that plaintiff's pleadings alleged a violation of the Fair Debt Collections Practices Act (FDCPA),15 U.S.C. § 1692 *et seq*.

## II. Motion for summary judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Defendant's motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."

*Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### B.     Discussion

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Here, plaintiff does not allege the violation of any particular section of the FDCPA, but simply takes the position that the prosecutor's January 11, 2011 letter violated the FDPCA, giving rise to a cause of action. *See* 15 U.S.C. § 1692k(d) ("[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs").

The record reflects that plaintiff was in contact with defendant after January 11, 2011, that plaintiff asked for an extension of time to pay the restitution and diversion fee, that plaintiff was allowed to split his payments into installments, that on February 7, 2011 plaintiff made a partial payment of less than the agreed-upon installment, that by February 14th plaintiff paid the remaining balance of the diversion fee, but that plaintiff failed to tender payment for the Secretary of State's restitution. Douglas Lloyd Aff. at ¶¶ 1-15. Plaintiff subsequently filed this action on April 27, 2011. Approximately eight months later, on November 8, 2011, defendant's office was informed that

plaintiff had paid off the debt owed. *Id*. at ¶ 15. Based on this information, the Eaton County

Prosecutor's office closed the file on the potential criminal prosecution arising from plaintiff's use

of a non-sufficient funds check. *Id.*

Plaintiff has not alleged that defendant violated a specific violation of the FDCPA.

Nevertheless, even if the court assumes that plaintiff's pleadings are sufficient to allege a violation

of the FDCPA, defendant enjoys absolute prosecutorial immunity from this civil action. State

prosecutors are absolute immunity from civil liability where their challenged action is intimately

associated with the judicial process. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). As the court

explained in *Imbler*:

> A prosecutor is duty bound to exercise his best judgment both in deciding which
> suits to bring and in conducting them in court. The public trust of the prosecutor's
> office would suffer if he were constrained in making every decision by the
> consequences in terms of his own potential liability in a suit for damages. Such suits
> could be expected with some frequency, for a defendant often will transform his
> resentment at being prosecuted into the ascription of improper and malicious actions
> to the State's advocate.

*Id.* at 424-25.

Since the *Imbler* decision, courts have extended the immunity beyond "initiating a

prosecution and . . . presenting the State's case," *Imbler*, 424 U.S. at 431, 96 S.Ct. 984, "to cover

any activities undertaken 'in connection with [one's] duties in functioning as a prosecutor,'

*Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir.2002)." *Skinner v. Govorchin*, 463 F.3d 518, 525

(6th Cir 2006). Absolute prosecutorial immunity "extends beyond the criminal process to conduct

in civil proceedings where a government attorney is operating in an enforcement role in 'initiating

. . . judicial proceedings.'" *Id.*, quoting *Cooper v. Parrish*, 203 F.3d 937, 947 (6th Cir.2000)

"Absolute prosecutorial immunity also attaches to administrative or investigative acts necessary for

a prosecutor to initiate or maintain a criminal prosecution." *Streater v. Cox*, 336 Fed.Appx. 470, 475 (6th Cir. 2009) (internal quotation marks omitted).

Lloyd sent the January 11, 2011 letter in his capacity as a prosecutor.  The letter was part of a process which allowed plaintiff to avoid an impending criminal prosecution for violation of M.C.L. § 750.131.  Because plaintiff complied with the terms of the diversion program as outlined in defendant's letter, it was not necessary for defendant to initiate that criminal prosecution. Under these circumstances, defendant is entitled to absolute prosecutorial immunity for this civil action which arises from the January 11, 2011 letter.  *Imbler*, 424 U.S. at 430-31; *Skinner*, 463 F.3d at 525; *Higgason*, 288 F.3d at 877; *Streater*, 336 Fed. Appx. at 475.   Accordingly, defendant is entitled to summary judgment.[1]

### III.    Conclusion

For reasons stated above, defendant's motion for summary judgment (docket no. 29) will be **GRANTED** and this case will be dismissed.   An order consistent with this opinion shall be issued forthwith.


Dated:  September 24, 2012                            /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge

---

[1] Defendant also sought summary judgment for the Eaton County Prosecutor's Office.  However, this request was unnecessary because Mr. Lloyd is the only defendant named in this action.  *See* Compl. (docket no. 11); Civil Action Cover Sheet (docket no. 1-1);Amend. Compl. (docket no. 5).